IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANIEL BELL, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civ. No. JKB-18-00744 |
| CSX TRANSPORTATION, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiffs—a group of current and former employees of Defendant CSX Transportation, Inc. ("CSX")—have brought this action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–54. For the following reasons, the Court will enter an order transferring the cases of Plaintiffs who are not Maryland residents (the "non-Maryland Plaintiffs") to their respective home federal district courts.

## I.    Background

The Court has already described this case's complicated procedural history in detail, *see Bell v. CSX Trans., Inc.*, Civ. No. JKB-18-0744, 2024 WL 2055250, at *1–4 (D. Md. May 8, 2024) (ECF No. 105), so will provide only a brief synopsis here. In short, Plaintiffs contend that CSX improperly disciplined them for taking FMLA leave, primarily during the Christmas and New Years period of late 2017 and early 2018. (*See generally* First Am. Compl., ECF No. 104.) Plaintiffs filed this action in March 2018, and in May 2019, the Court granted partial summary judgment in CSX's favor on certain of Plaintiffs' claims challenging CSX's attendance policies. *See Bell v. CSX Trans., Inc.*, Civ. No. JKB-18-0744, 2019 WL 2146917 (D. Md. May 16, 2019) (hereinafter "*Bell I*") (ECF Nos. 50, 51). Plaintiffs' other claims were stayed pending the outcome

of related arbitration proceedings under the Plaintiffs' unions' collective bargaining agreements ("CBAs") with CSX. After arbitrations concluded in August 2023, CSX moved for summary judgment, arguing in essence that the arbitrations had resolved all remaining issues in the case. (ECF No. 91.) The Court subsequently lifted the stay and denied the motion for summary judgment, holding that: (1) Plaintiffs' FMLA claims were not preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151a, and (2) the arbitral findings of fact did not have issue-preclusive effect in the instant litigation. *See generally* 2024 WL 2055250 (hereinafter "*Bell II*").

After the Court's ruling, the parties engaged in mediation and settlement discussions before a magistrate judge, with 29 of the 63 Plaintiffs reaching settlement agreements with CSX. Those 29 Plaintiffs were dismissed from the case on October 11, 2024. (*See* ECF No. 124.) Of the 34 remaining Plaintiffs, only five are Maryland residents (or at least were during the relevant time period). The Court has separately granted CSX summary judgment on the claims of three non-Maryland residents. That leaves 26 non-Maryland Plaintiffs with live claims.

After the Court issued its *Bell II* decision, it issued a Memorandum indicating that the Court was considering transferring the cases of non-Maryland Plaintiffs to those plaintiffs' home federal judicial districts. (ECF No. 107.) The Court invited the parties to share their positions on the matter. (*Id.*) CSX stated that it opposed transfer and offered various arguments in support of its position (ECF No. 113); Plaintiffs stated that they were not opposed to transfer (ECF No. 112). The Court issued a subsequent Memorandum and Order on October 24, 2024, stating that it had considered CSX's arguments but remained inclined to transfer the cases, and directing the parties to jointly submit a list containing the proposed transferee court for each non-Maryland Plaintiff.[1]

---

[1] In that ruling, the Court discussed CSX's concerns about the possibility of inconsistent rulings and differing appellate review, and found them to be unpersuasive in the context of this case. (*See* ECF No. 126 at 2–3 & n.2.)

2

(ECF No. 126.) The parties submitted the requested list, which the Court has reviewed and finds appropriate.[2] (ECF No. 127.)

## II. Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In deciding whether to transfer venue, the Court considers four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). The Court may transfer venue *sua sponte* after giving the parties notice and an opportunity to be heard. *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986).

## III. Analysis

Turning to the first factor, the Court ordinarily accords substantial weight to the plaintiff's choice of forum. *Plumbers & Pipefitters*, 791 F.3d at 444. However, that weight is lessened when the forum is not the plaintiff's home forum and when the complained-of conduct did not occur in that forum. *See, e.g., EEOC v. Sheetz, Inc.*, Civ. No. JRR-24-01123, 2024 WL 4416756, at *4 (D. Md. Oct. 4, 2024); *Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002). As the Court will explain in more detail below, with respect to the non-Maryland Plaintiffs, most (if not all) of the conduct relating to the remaining claims in this case

---

[2] A threshold question when transferring venue is whether the case could have properly been brought in the proposed transferee district. *See* 28 U.S.C. § 1404(a); *Menk v. Mitre Corp.*, 713 F. Supp. 3d 113, 134 (2024). As relevant here, venue is generally proper in any district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). No party disputes that venue is proper under § 1391(b)(2) in each Plaintiff's respective home district.

happened outside of Maryland, most likely in or near the Plaintiffs' home districts. Moreover, although Plaintiffs initially chose to bring this action in the District of Maryland, Plaintiffs have since stated that they do not oppose transferring the non-Maryland Plaintiffs' cases to their respective home districts. Thus, the Court finds that the first factor is essentially neutral.

The second and third factors—witness convenience and access, as well as convenience of the parties—are also neutral. The non-Maryland Plaintiffs are spread out over sixteen federal districts throughout the eastern half of the country. Either option facing the Court—corralling all Plaintiffs in this jurisdiction or sending the non-Maryland Plaintiffs to their respective home districts—carries a mix of efficiencies and inefficiencies. There would undoubtedly be some efficiencies in consolidating all potential trials in this district, because, for example, witnesses whose testimony may be relevant for multiple different Plaintiffs' cases would need only travel to Maryland, as opposed to multiple different districts. On the other hand, transferring cases would mean that trials would occur closer to the location where the events in question occurred. Many witnesses would have enhanced convenience from having trial closer to home instead of having to travel to Baltimore. In short, [n]o matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away." *Brock v. Entre Comp. Ctrs., Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991). Thus, as the Court previously explained, these factors do not strongly militate in either direction. (ECF No. 126 at 3.)

The dispositive factor in this case is the interest of justice. There is no exhaustive list of the considerations that may be relevant to the interest-of-justice inquiry. The Court considers "public interest factors aimed at systemic integrity and fairness," including, when relevant, questions of judicial economy, the avoidance of inconsistent judgments, relative docket congestion, and comparative knowledge of the applicable law. *Menk v. MITRE Corp.*, 713 F.

Supp. 3d 113, 139 (D. Md. 2024) (internal quotation and citation omitted). Most saliently here, an important facet of the interest of justice analysis is our system's preference for having local controversies decided locally. *Id.*; *see also In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (referring to "the local interest in deciding local controversies close to home"); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (similar); *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (interest of justice inquiry includes "the respective desirability of resolving controversies in each locale . . . and the relationship of each community to the controversy").

As the Court previously noted, "now that the Court has resolved threshold legal questions[,] the remaining issues are highly fact-specific and are best resolved in the federal judicial districts where the vast majority of all relevant facts occurred." (ECF No. 126 at 3 (citing 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3854 & n.29).) The Court has resolved most, if not all, of the global issues in this case—such as the facial challenge to CSX's attendance policy, *see generally Bell I*, 2019 WL 2146917, and questions about preemption and the preclusive effect of related arbitrations, *see generally Bell II*, 2024 WL 2055250. What is left is the need for a fact-intensive inquiry into whether, with respect to each individual Plaintiff, CSX's decision to impose discipline for taking FMLA leave was the result of CSX's good-faith belief that the employee was being dishonest, or whether the accusation of dishonesty was a pretext for retaliation against that Plaintiff for exercising his or her FMLA rights. *See Bell II*, 2024 WL 2055250, at *6 (citing *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 429 (4th Cir. 2015)). This inquiry necessarily requires an in-depth investigation of the particular facts of each individual Plaintiff's case, including questions such as that Plaintiff's reasons for taking FMLA leave, the evidence that Plaintiff contemporaneously offered CSX in support of that request, and the details

of any internal CSX investigation into that Plaintiff's request. There is no contention that the relevant events occurred in Maryland, and it is reasonable to assume that most, if not all, relevant events occurred in the judicial district wherein each Plaintiff lived and worked.

Take, for example, the allegations of the lead Plaintiff on the case caption, Daniel Bell. Plaintiffs allege that Bell suffers from a serious health condition, and that he had requested and previously been granted intermittent FMLA leave because of this condition. (ECF No. 104 at 16.) Bell allegedly was unable to safely work on December 24, 2017, because of this condition, and notified CSX of this fact. (*Id.*) However, CSX accused Bell of dishonestly claiming FMLA leave and fired him. (*Id.* at 17.) According to Plaintiffs, "CSX had no reason to believe Plaintiff Daniel Bell was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday." (*Id.*) Mr. Bell resides in Bedford, Indiana (*id.* at 4), and the evidence relevant to his case—medical records, employment records, etc.—is likely to be located in Indiana. So, too, are relevant witnesses, such as Mr. Bell himself, his supervisors and/or coworkers, and any pertinent healthcare professionals. When the plaintiff resides in Indiana, when most—if not all—relevant events occurred in Indiana, and when much of the evidence and many of the witnesses are likely to be located in Indiana, the interests of justice strongly counsel in favor of an Indiana court, rather than a Maryland court, hearing the case. *See Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 506 (E.D. Va. 2012) (granting a motion to transfer venue from Virginia to the Northern District of California ("NDCA") because "the situs of this controversy is San Jose, not Richmond," and therefore it is "undoubtedly more fair to burden jurors in the NDCA rather than Richmond").

Finally, the Court considers judicial economy issues. The Court does not presume that the District of Maryland is any busier than the sixteen other districts in which the non-Maryland Plaintiffs reside. That said, because of the fact-intensive nature of the individual cases, the Court

6

would likely need to conduct many separate trials to the extent that claims survive any further dispositive motions—perhaps, in a worst-case scenario, a separate trial for each Plaintiff's case.[3] This approach would be inefficient and could lead to substantial trial delays. By contrast, if the Court transfers cases, then no transferee court would have more than four individual Plaintiffs' cases, and most transferee courts would have only one or two Plaintiffs' cases. Thus, those Plaintiffs' cases are much more likely to go to trial or otherwise be resolved expeditiously than they would if all cases languished here in Maryland while this Court tries cases one by one. This factor counsels in favor of transfer. *See In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020) (holding that a court may consider the "likely speed to trial in the transferor and potential transferee forums" when considering whether transfer would be in the interest of justice).

## IV. Conclusion

For the foregoing reasons, the Court will direct the clerk to transfer the cases of the non-Maryland Plaintiffs to their respective home districts. The Court retains jurisdiction over the five Maryland Plaintiffs and the three Plaintiffs against whom the Court has already entered summary judgment. A separate order will issue.

DATED this 26 day of November, 2024.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
United States District Judge

---

[3] CSX argues that "if the claims are kept together, to the extent any survive summary judgment, the Court could consider consolidated trial proceedings or bifurcating the issues in such a way as to avoid the need for duplicative testimony in case after case." (ECF No. 113 at 16–17.) Perhaps. But as the Court has explained, each Plaintiff's case turns largely on its own facts, and although some evidence may be shared between each Plaintiff, a jury would need to consider each case separately.